20-2788 from the District of Minnesota. United States v. Seth Ronning. Mr. Hagler. Good morning, your honors. Please proceed with your reading. May it please the court. My name is Thomas Hagler. I represent the appellant Seth Ronning. This case basically has three issues. First being the unfairness of the Armed Career Criminal Act and its mandatory minimums because of its impact on racial minorities. And also its unfairness when it comes to defendants with juvenile predicates. And the second issue is whether Wisconsin's armed robbery statute is a valid predicate for the ACCA. And the third issue would be that the court didn't properly consider the appellant's request for concurrent sentencing on his state case. So, going right into the first issue, we are arguing that the application of the ACCA violates the defendants' equal protection rights because it is unequally applied to defendants on the basis of race and has a massively disparate and adverse racial impact on non-white defendants. In 2016, only 15% of the ACCA convictions were white offenders, which is really disproportionate to the U.S. population because about 70% of people in the United States identify as white. So, to have only 15% of the ACCA convictions be white people, there is a stark and clear pattern that emerges that is unexplainable on grounds other than race. Counsel, does this panel have authority to adopt your disparate impact theory in light of controlling Supreme Court precedent? Well, Your Honor, I'm not asking the court to disregard Supreme Court precedent, but perhaps to revisit the theory of unconscious racism and that the discriminatory purpose element is actually satisfied by the clear pattern and unexplainable on non-racial grounds that's outlined in the Arlington Heights case. And also that the discriminatory purpose standard is outdated and ill-suited to combat the systemic racism and pervasive white supremacist institutions in the criminal justice system today. Counsel, I wanted to ask you about that. That's a very serious statement. And your brief says that there are pervasive white supremacist institutions in the criminal justice system today. Could you tell the court which institutions you're referring to? I am not singling out any specific person as being part of a white supremacist institution, but rather I would rely on the scholarly authorities that I cite to in my brief to inform the court on those matters. And many scholars do view that unconscious racism is still as much of a problem today as it was in 1984 when this legislation was enacted. And the decision to bring federal charges against the appellant to not, among others, is similarly situated is racially discriminatory. The United States Sentencing Commission has conducted several studies since the early 90s and there is a clear pattern that non-white defendants are charged and convicted with the ACCA at rates so disproportionate to their existence in the general population that the effect is inexplainable on non-racial grounds. Counsel, let me ask you about your theory there. I believe that something like 90% plus of criminal defendants are men. Under your theory, would criminal laws that disproportionately impact men be unconstitutional? I believe there may be other sociological studies that address that issue. There is some data on the gender disparities in the Sentencing Commission reports, but no I would not be making that argument. But what I am making the argument for is that the racial impact on minorities is inevitable and foreseeable in this case. And if we go back to the Yick Woe v. Hopkins case in 1886 that used this stark and dramatic language to say we can see that this is racism even though there isn't proof of any one particular person that made a decision in this case. But it's that the whole system as an aggregate, even if Congress didn't consciously make this decision, the law is purportedly race neutral. But that's not how the law is enforced. If I may move on to the other issue that defendants with juvenile convictions are not treated equally. I think the government argues that these were adult convictions for Mr. Ronning, but I think that's missing the point that Mr. Ronning was 14 years old when he committed these predicate robberies. And that in Minnesota, while a jury trial may be afforded in the juvenile system in some cases, that you don't get a jury when it comes to the decision to execute the adult sentence and punish a person as an adult. So the argument is that these juvenile predicates shouldn't be used because the defendants weren't afforded the same due process as people in the adult system. And the second issue would be that Wisconsin's robbery statute can be satisfied without the use of a firearm, a knife, or a destructive device. And while the government points out that Mr. Ronning would be considered an adult in Wisconsin at age 17, Wisconsin is only one of three states that currently are still doing that. And under the Federal Juvenile Delinquency Act, juveniles are defined as having reached the age of 18. So I would argue that it's still a juvenile offense predicate being used and that the Wisconsin statute is too broad. It's indivisible regarding the type of dangerous weapon because it can be satisfied without the use of an actual weapon and therefore it should not count as a predicate. And lastly, the court denied Ronning's request for credit on his related state case and as the government has just last night filed a correction to their brief and we thank them for that. Mr. Ronning was actually arrested in 2017 and did sit in jail for about three years before the federal government decided to prosecute this case. And the gist of this argument is that he lost the opportunity to serve his state and federal sentences together and he did raise this issue in his position on sentencing but it wasn't addressed by the district court and the court should have addressed it. Was it clearly appealed to the district court in the way you're asking us? Was it raised in the same manner you're raising it right now? In his sentencing position, they asked the court to consider it in the same section as asking for a downward variance and departure. Departure or variance. It was raised in the same section of the position on sentencing. Thank you. Mr. Heckler. Thank you. Ms. Kirkpatrick. Ms. Kirkpatrick, your mic's muted. Well, Madam Clerk, I guess you should check and see. Oh, there she is. Ms. Kirkpatrick, please provide us your argument. Apparently, she can't hear us. Ms. Kirkpatrick? All right. All right. All right. All right. Well, we're happy to have you with us this morning. Please present your argument. Thank you, Your Honor. May it please the court, my name is Lisa Kirkpatrick. I'm an assistant. I'm sorry. Judge Smith, I see your mouth moving. Are you not able to hear me? I hear you just fine. Thank you. I will start over. My name is Lisa Kirkpatrick. I'm an assistant U.S. attorney in the District of Minnesota. The Young Criminal Act is rationally related to the purposes of incapacitating, repeat, dangerous offenders. It sounds like you're having feedback there in your office. You may have a mic that's too close or turned up too high. Your Honors, I am having a lot of difficulty with my connection. Would it be okay if I left this meeting and joined on the telephone? That will be fine. Okay. Can you hear me? Yes, we can. Okay. I apologize for the technical glitches. Arguing for my office, which I thought would have been the safest place to deal with computers, but that turns out not to be the fact of the matter. To repeat myself, my name is Lisa Kirkpatrick and I'm an assistant U.S. attorney. The Armed Career Criminal Act is rationally related to the legitimate governmental purposes of incapacitating, repeat, armed offenders, to protecting the public, and to providing both specific and general deterrence. No one disputes that those are legitimate governmental goals. And no one disputes, or at least the journals that the defendant cites in his brief, no one disputes that those are the goals, those were Congress's stated goals in enacting the Armed Career Criminal Act. The district court found that this act, the Armed Career Criminal Act, passed constitutional muster under the Rational Basis Standard Review, and it does, and that judgment should be confirmed because, excuse me, should be affirmed because Congress acted rationally when it targeted repeat armed offenders for harsher sentences. The defendant's argument is not that these weren't legitimate goals or that those goals, if real, would not be rationally related to incapacitation and deterrence. Instead, his argument is that Congress unconsciously discriminated when it enacted the Armed Career Criminal Act. But he acknowledges that he can't show purposeful discrimination, and that's what Supreme Court precedent requires. It requires a showing not only of disparate impact when a defendant is making an equal protection challenge against a race-neutral statute such as the ACCA, that disparate impact plus discriminatory purpose. His argument is incompatible with that standard. His argument is that Congress acted unconsciously discriminatorily based on implicit bias and systemic racism when it enacted the ACCA. These arguments are important and they raise difficult societal concerns, but the defendant's options here are to go in front of the Supreme Court and convince the Supreme Court to adopt a different standard or to go in front of Congress and get Congress to change the law. But he doesn't have the option of asking this court to disregard binding precedent and to apply strict scrutiny to the Armed Career Criminal Act. And so for those reasons, Your Honors, we ask that this court affirm the district court's determination that the ACCA is constitutional, is rationally related to legitimate governmental purposes. If Your Honors don't have any questions regarding the defendant's constitutional challenges, I'll pause briefly, but then would like to turn to his time-served arguments. Hearing no questions, I just want to clarify mostly for Your Honors the letter that I filed late last night concerning the defendant's custodial status. When the government filed its brief, it believed the defendant had not been in custody between the time he committed the offense on September 21, 2017 and the time his probation was revoked in October 2018, and that was a mistake. But I'd like to explain why that doesn't affect any of the reasoning in the government's brief. So the timeline is a little confusing. The defendant was arrested in Minnesota and released on the gun charge in Duluth, Minnesota. So he was in jail just one day for that, from September 20 to September 21, 2017. Then within the week, Wisconsin charged him with stealing that gun and with possessing that gun as a felon. They detained him, so he was detained at that time from sometime September 27 or so, 2017, onward. About a month later, a couple weeks later, his probation officer filed a revocation petition arising out of a probation violation for his 2009 robbery conviction. Then in January of 2018, he was released on bond from the gun theft charges, all the firearm charges in Wisconsin, but that bond didn't actually have an effect on his custodial status because he was still held on that pending probation revocation. Then in May 2018, the firearm charges are dismissed entirely, and then in October 2018, his probation is revoked and he's sentenced to three years and three days in prison. And the reason this doesn't affect the government's argument concerning 5G 1.3 is that no sentence was ever imposed. Those charges were dismissed regarding the firearm charges. So whether or not they may have been relevant conduct for purposes of the relevant conduct analysis under 1B 1.3, the fact of the matter remains that no sentence was ever imposed. So under 5G 1.3, on its face, it simply doesn't apply because it only applies where a defendant is serving a term of imprisonment for related conduct. So that's the first point. My second point is that 5G doesn't apply anyway because the only undischarged term of imprisonment he was serving was for the 2009 robbery conviction. And it's our position that under no set of circumstances could part of a criminal judgment, that probationary term, from a 2009 offense be relevant conduct for purposes of a later offense. Here is a 2017 possession of a firearm. And even viewed more generously, there's no question that the defendant's probation wasn't revoked simply because of or solely because of that incident at his apartment with the gun. It was also revoked because he had a separate early September 2017 charge for disorderly conduct as well as for using alcohol. And finally, Your Honor, the only issue that wasn't waived by the terms of the defendant's plea agreement that the defendant has raised here is his argument that his Wisconsin robbery conviction should not have counted as a predicate offense. The constitutional claims, the time served claims, those are waived by express terms of the agreement. And the juvenile conviction issue with the time, different occasions argument he raises concerning his Wisconsin robbery conviction is not waived, but it is moot because even without that Wisconsin conviction he still has four predicate offenses which qualifies him for an ACCA sentence. And I'm happy to answer any other questions, but otherwise we would ask that this court affirm the judgment of the district court. I see no questions. Thank you, Ms. Kirkpatrick. Mr. Hagler, would you address the waiver issue? You're muted. Thank you, Your Honor. Well, Your Honor, I don't think that he did expressly specifically agree to the 180 month sentence, so I would not call it a waiver. And he specifically argued for other sentences in his sentencing position. He was asking for five years or other departures or variances. And I think the plea agreement says he might be sentenced to 180 months. I don't think he ever specifically agreed to that. Well, thank you, Mr. Hagler. The court appreciates your representation of your client under the Criminal Justice Act. And we will take the argument that's been given to us today in the briefing and render a decision in the case in due course. Thank you.